# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2024 JUN 27 PM 4:20
CLERK
BY AL
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. ) NO. 2:24-cr-67-1-2
)
FENG CHEN AND TIANQIONG XU, ) (18 U.S.C. §§ 2, 1343, 1349, 1956(h))
Defendants. )

**INDICTMENT**

The Grand Jury charges:

COUNT ONE

Background

1. At all times relevant to the indictment:

a. WeChat was a Chinese social media messaging application supporting text, voice, and video communications, as well as mobile payment options. WeChat was based in Hong Kong and did not utilize servers in Vermont.

b. Telegram was a cloud-based social messaging service providing end-to-end encryption for communications on its platform. Telegram did not utilize servers in Vermont.

c. Cryptocurrency was a digital payment system based on a distributed and decentralized network of computers. Cryptocurrency could be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Most cryptocurrencies had a "blockchain," or a distributed public ledger, containing an historical record of every transaction.

d. Cryptocurrency is stored in a virtual account called a wallet. Wallets are software

programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency.

e. Coinbase was a U.S.-based cryptocurrency exchange with headquarters in Oakland, California.

f. Binance was an international crypto-currency exchange with a headquarters in Seychelles.

g. Tether, identified by the symbol USDT, was a type of cryptocurrency known as a stable coin because its value was tied to particular fiat currencies, in the case of USDT, to the U.S. dollar. USD Coin, identified by the symbol USDC, is another type of stable coin.

h. FENG CHEN and TIANQIONG XU were married Chinese citizens living in Texas.

i. VICTIM-1 was a resident of Vermont who spoke Chinese. In or about 2021, VICTIM-1 was a member of a WeChat group focused on stock trading.

<u>The Scheme</u>

2. Beginning at least as early as January 2021 and continuing through January 2024, FENG CHEN and TIANQIONG XU and others, known and unknown to the Grand Jury, created a scheme to defraud victims of funds by encouraging the victims to invest in cryptocurrency using fraudulent cryptocurrency investment applications ("apps"). The scheme impacted over 100 victims across the United States and internationally, including VICTIM-1, and resulted in the theft of millions of dollars from victims.

3. It was part of the scheme that FENG CHEN would develop software for applications that appeared to be cryptocurrency investment platforms. These platforms included "BBKX

DT" and "BFEX DT," among others.

4. It was further a part of the scheme that FENG CHEN and TIANQIONG XU would prepare materials promoting investment through the fake cryptocurrency investment platforms and presenting those platforms as legitimate investment opportunities.

5. It was further part of the scheme that members of the conspiracy would contact potential victims through online discussion fora including WeChat groups focused on investment opportunities.

6. It was further a part of the scheme that members of the conspiracy would direct victims to download and access the fake cryptocurrency investment platforms CHEN designed and to send funds into the cryptocurrency wallets associated with those platforms.

7. It was further a part of the scheme that while the fake cryptocurrency investment platforms CHEN designed would show the victims their "profits" from their new cryptocurrency investments, allowing conspirators to continue to promote additional investments, the victim funds would, in fact, be moved by conspirators through a series of cryptocurrency wallets to conceal the source of the funds and ensure the funds were well beyond the victims' control.

8. It was further a part of the scheme that CHEN, XU, and their co-conspirators would take the victim funds for their own benefit.

<u>Manner and Means</u>

9. As part of the scheme, on or about July 12, 2021, VICTIM-1 received a direct message via WeChat from another participant in VICTIM-1's WeChat stock trading group. The individual called himself "Adl" and often communicated with VICTIM-1 in Chinese.

10. As part of the scheme, on or about July 15, 2021, Adl suggested in a WeChat

communication with VICTIM-1 that VICTIM-1 invest in cryptocurrency. At Adl's direction, VICTIM-1 opened an account at Coinbase and sent an approximately $100,000.00 wire transfer from her bank to Coinbase to purchase cryptocurrency.

11. As part of the scheme, between on or about July 15, 2021 and on or about July 23, 2021, Adl directed VICTIM-1 to download the BBKX DT app, one of the fraudulent cryptocurrency investment apps CHEN developed, using a link Adl provided. Adl also directed VICTIM-1 to begin communicating with him via Telegram rather than WeChat. After VICTIM-1 downloaded the BBKX DT application, Adl directed VICTIM-1 to use funds from VICTIM-1's Coinbase account to purchase USDC tokens and to transfer those tokens into a wallet associated with BBKX DT.

12. As part of the scheme, on or about July 23, 2021, at Adl's direction, VICTIM-1 liquidated a $300,000.00 IRA and transferred the funds from VICTIM-1's bank to Coinbase for the purchase of USDC. The USDC was placed into the cryptocurrency wallet associated with BBKX DT. In total, VICTIM-1 transferred at Adl's direction approximately $600,000.00 from VICTIM-1's bank to Coinbase to purchase cryptocurrency.

13. As part of the scheme, when, beginning on or about July 27, 2021, VICTIM-1 attempted to withdraw funds from VICTIM-1's BBKX DT account, VICTIM-1 was directed to communicate with BBKX DT "customer service" via Telegram. In response to requests from the person using the "customer service" Telegram account, VICTIM-1 sent copies of VICTIM-1's driver's license and proof of citizenship to the Telegram account.

14. As part of the scheme, on or about August 6, 2021, the user of the Telegram account informed VICTIM-1 that VICTIM-1's account at BBKX DT would be frozen unless

VICTIM-1 provided even more funds. VICTIM-1 did not pay the requested fee and was unable to withdraw any funds.

15. As part of the scheme, once victim funds were converted to cryptocurrency and received into wallets associated with BBKX and other fake cryptocurrency investment platforms, the conspirators quickly moved the funds out of the receiving wallets, to a landing wallet. From the landing wallets, victim funds were then transferred through a series of additional wallets, co-mingling with funds from other victims. Ultimately, at least $5,000,000.00 in cryptocurrency was transferred into Tether while additional funds were transferred into a Binance wallet associated with FENG CHEN and TIANQIONG XU, among other wallets.

<u>The Wire Fraud Conspiracy</u>

16. From at least as early as January 2021 and continuing through at least January 2024, in the District of Vermont and elsewhere, Defendants FENG CHEN and TIANQIONG XU, and others known and unknown to the Grand Jury, knowingly and willfully conspired to commit wire fraud, that is to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by interstate wire, writings, signs, and signals for the purpose of executing the scheme.

(18 U.S.C. § 1349)

## COUNTS TWO THROUGH FIVE

1. Paragraphs 1 through 15 of Count One are are hereby realleged and incorporated as if set forth fully herein.

2. On or about the following dates, FENG CHEN and TIANQIONG XU caused the following transmissions to be sent via interstate and international wire and aided and abetted causing such sending:

| Count | Date | Wire Type | Description |
|---|---|---|---|
| 2 | July 15, 2021 | Electronic account creation | VICTIM-1 opens Coinbase account |
| 3 | July 23, 2021 | Bank wire transfer | VICTIM-1's bank sends IRA funds to BBKX wallet |
| 4 | July 29, 2021 | Telegram communication | BBKX "customer service" requests VICTIM-1 pay additional funds in order to make withdrawal |
| 5 | August 6, 2021 | Telegram communication | BBKX "customer service" tells VICTIM-1 account will close on August 7, 2021 unless VICTIM-1 provides additional funds |

(18 U.S.C. §§ 1343 and 2)

## COUNT SIX

1. Paragraphs 1 through 15 of Count One are hereby realleged and incorporated as if set forth fully herein.

2. From on or about January 2021 through January 2024, in the District of Vermont and elsewhere, the defendants FENG CHEN and TIANQIONG XU did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is transfer of victim funds from Coinbase wallets associated with BBKX and other platforms into wallets controlled by the conspiracy, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 in violation of 18 U.S.C. § 1957.

(18 U.S.C. § 1956(h))

Forfeiture Notice No. 1

1. The allegations contained in Counts 1 through 5 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1349, set forth in Count 1, and Title 18, United States Code, Section 1343, set forth in Counts 2 through 5 of this Indictment, the defendants, FENG CHEN and TIANQIONG XU shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

A. 325,705.7 USDT from seed phrases located in notebooks within the residence at 1039 Echols Drive, Frisco, Texas 75306;

B. 0.110920719 ETH from seed phrases located in notebooks within the residence at 1039 Echols Drive, Frisco, Texas 75306; and

C. Tether (USDT) held in the following Target Wallets, with the listed balances as of October 27, 2021 (for a total of 5,814,573.440928 USDT/ETH):

   i. Target Wallet 1 (0x42D8568C56C44E070f51fF9D268b6388EF2f846D): USDT/ETH 1,275,940
   ii. Target Wallet 2 (0x1097850B35dFeCD1B7e7CE9190aEba45c6c2b1E9: USDT/ETH 1,330,000.55
   iii. Target Wallet 3 (0x6f2f58817dB62A31A0253495c7550444958daF17): USDT/ETH 3,121,468.387334
   iv. Target Wallet 4 (0xa0e283a75e498FEcaE3A5bD0170D89B9FC26BCe8: USDT/ETH 871,164.503594

D. Precious metals seized from the residence at 1039 Echols Drive, Frisco, Texas 75306 as follows:

i. Approximately four (4) mini "PAMP" gold bars, weighing approximately 124.406 grams;
ii. Approximately two (2) foreign pieces of silver metal, weighing approximately 53.2 grams;
iii. Approximately four (4) circular pieces of gold metal, weighing approximately 122.7 grams.

3. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)).

Forfeiture Notice No. 2

1. The allegations contained in Count 6 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956(h) , the defendants, FENG CHEN and TIANQIONG XU shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

A. 325,705.7 USDT from seed phrases located in notebooks within the residence at 1039 Echols Drive, Frisco, Texas 75306;

B. 0.110920719 ETH from seed phrases located in notebooks within the residence at 1039 Echols Drive, Frisco, Texas 75306; and

C. Tether (USDT) held in the following TARGET WALLETS, with the listed balances as of October 27, 2021 (for a total of 5,814,573.440928 USDT/ETH):

i. Target Wallet 1 (0x42D8568C56C44E070f51fF9D268b6388EF2f846D): USDT/ETH 1,275,940

ii. Target Wallet 2 (0x1097850B35dFeCD1B7e7CE9190aEba45c6c2b1E9: USDT/ETH 1,330,000.55

iii. Target Wallet 3 (0x6f2f58817dB62A31A0253495c7550444958daF17): USDT/ETH 3,121,468.387334

iv. Target Wallet 4 (0xa0e283a75e498FEcaE3A5bD0170D89B9FC26BCe8: USDT/ETH 871,164.503594

D. Precious metals seized from the residence at 1039 Echols Drive, Frisco, Texas 75306 as follows:

i. Approximately four (4) mini "PAMP" gold bars, weighing approximately 124.406 grams;
ii. Approximately two (2) foreign pieces of silver metal, weighing approximately 53.2 grams;
iii. Approximately four (4) circular pieces of gold metal, weighing approximately 122.7 grams.

3. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

(18 U.S.C. § 982(a)(1)) [redacted]

A TRUE BI [redacted]

FOREPERSON

Nikolas P. Kerest (CAPC)
NIKOLAS P. KEREST (EAPC)
United States Attorney
Burlington, Vermont
June 27, 2024